UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC,** | * | |
| Plaintiff, | * | CASE NO. _____ |
| v. | * | |
| **JOHN DOE subscriber assigned IP address 108.28.11.225** | * | |
| | * | |
| Defendant. | * | |
| | * | |

**COMPLAINT-ACTION FOR DAMAGES FOR
PROPERTY RIGHTS INFRINGEMENT**

Plaintiff, Malibu Media, LLC, sues Defendant John Doe subscriber assigned IP address 108.28.11.225, and alleges:

**Introduction**

1. This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

2. Defendant is a persistent online infringer of Plaintiff's copyrights. Indeed, Defendant's IP address as set forth on Exhibit A was used to illegally distribute each of the copyrighted movies set forth on Exhibit B.

3. Plaintiff is the registered owner of the copyrights set forth on Exhibit B (the "Copyrights-in-Suit").

**Jurisdiction And Venue**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).

1

5. Plaintiff used proven IP address geolocation technology which has consistently worked in similar cases to ensure that the Defendant's acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District, and therefore this Court has personal jurisdiction over the Defendant because (i) Defendant committed the tortious conduct alleged in this Complaint in this State, and (ii) Defendant resides in this State and/or (iii) Defendant has engaged in substantial and not isolated business activity in this State.

6. Based upon experience filing over 1,000 cases the geolocation technology used by Plaintiff has proven to be accurate to the District level in over 99% of the cases.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (ii) the Defendant resides (and therefore can be found) in this District and resides in this State; additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant or Defendant's agent resides or may be found in this District.

**Parties**

8. Plaintiff, Malibu Media, LLC, (d/b/a "X-Art.com") is a limited liability company organized and existing under the laws of the State of California and has its principal place of business located at 409 W. Olympic Blvd., Suite 501, Los Angeles, CA, 90015.

9. Plaintiff only knows Defendant by his, her or its IP Address. Defendant's IP address is set forth on Exhibit A.

10. Defendant's Internet Service Provider can identify the Defendant.

**Factual Background**

I. *Defendant Used the BitTorrent File Distribution Network To Infringe Plaintiff's Copyrights*

11. The BitTorrent file distribution network ("BitTorrent") is one of the most common peer-to-peer file sharing venues used for distributing large amounts of data, including, but not limited to, digital movie files.

12. BitTorrent's popularity stems from the ability of users to directly interact with each other in order to distribute a large file without creating a heavy load on any individual source computer and/or network. The methodology of BitTorrent allows users to interact directly with each other, thus avoiding the need for intermediary host websites which are subject to DMCA take down notices and potential regulatory enforcement actions.

13. In order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces called bits. Users then exchange these small bits amongst each other instead of attempting to distribute a much larger digital file.

14. After the infringer receives all of the bits of a digital media file, the infringer's BitTorrent client software reassembles the bits so that the file may be opened and utilized.

15. Each bit of a BitTorrent file is assigned a unique cryptographic hash value.

16. The cryptographic hash value of the bit ("bit hash") acts as that bit's unique digital fingerprint. Every digital file has one single possible cryptographic hash value correlating to it. The BitTorrent protocol utilizes cryptographic hash values to ensure each bit is properly routed amongst BitTorrent users as they engage in file sharing.

17. The entirety of the digital media file also has a unique cryptographic hash value ("file hash"), which acts as a digital fingerprint identifying the digital media file (e.g. a movie). Once infringers complete downloading all bits which comprise a digital media file, the

BitTorrent software uses the file hash to determine that the file is complete and accurate.

18.   Plaintiff's investigator, IPP International UG, established a direct TCP/IP connection with the Defendant's IP address as set forth on Exhibit A.

19.   IPP International UG downloaded from Defendant one or more bits of each of the digital movie files identified by the file hashes on Exhibit A.

20.   On information and belief, Defendant downloaded, copied, and distributed a complete copy of Plaintiff's movies without authorization as enumerated on Exhibit A.

21.   Each of the cryptographic file hashes as set forth on Exhibit A correlates to copyrighted movies owned by Plaintiff as identified on Exhibit B.

22.   IPP International UG downloaded from Defendant one of more bits of each file hash listed on Exhibit A.  IPP International UG further downloaded a full copy of each file hash from the BitTorrent file distribution network and confirmed through independent calculation that the file hash matched what is listed on Exhibit A.  IPP International UG then verified that the digital media file correlating to each file hash listed on Exhibit A contained a copy of a movie which is identical (or alternatively, strikingly similar or substantially similar) to the movie associated with that file hash on Exhibit A.  At no time did IPP International UG upload Plaintiff's copyrighted content to any other BitTorrent user.

23.   IPP International UG connected, over a course of time, with Defendant's IP address for each hash value as listed on Exhibit A.  The most recent TCP/IP connection between IPP International UG and the Defendant's IP address for each file hash value listed on Exhibit A is included within the column labeled Hit Date UTC.  UTC refers to Universal Time which is utilized for air traffic control as well as for computer forensic purposes.

24.   An overview of the Copyrights-in-Suit, including each hit date, date of first

publication, registration date, and registration number issued by the United States Copyright Office is set forth on Exhibit B.

25. IPP International UG's software also logged Defendant's IP address being used to distribute third party files through BitTorrent. This evidence indicates that Defendant engaged in BitTorrent transactions associated with 532 number of files between 10/18/2012 and 09/30/2013. Collectively, this evidence is referred as the "Additional Evidence".

26. Plaintiff has the Additional Evidence on a document and can produce it.

27. The Additional Evidence demonstrates that Defendant is a persistent BitTorrent user.

28. Many of the titles to the third party works may also be relevant to proving Defendant is the infringer because they correlate to the Defendant's hobbies, profession, or other interests.

## Miscellaneous

29. All conditions precedent to bringing this action have occurred or been waived.

30. Plaintiff has retained counsel and is obligated to pay said counsel a reasonable fee for its services.

## COUNT I
## Direct Infringement Against Defendant

31. The allegations contained in paragraphs 1-30 are hereby re-alleged as if fully set forth herein.

32. Plaintiff is the owner of the Copyrights-in-Suit, as outlined in Exhibit B, each of which covers an original work of authorship.

33. By using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the Copyrights-in-Suit.

34. Plaintiff did not authorize, permit or consent to Defendant's distribution of its works.

35. As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

(A) Reproduce the works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B) Redistribute copies of the works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C) Perform the copyrighted works, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the works' images in any sequence and/or by making the sounds accompanying the works audible and transmitting said performance of the works, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publically" perform); and

(D) Display the copyrighted works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the works nonsequentially and transmitting said display of the works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

36. Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

WHEREFORE, Plaintiff respectfully requests that the Court:

(A) Permanently enjoin Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted works;

(B) Order that Defendant delete and permanently remove the digital media files relating to Plaintiff's works from each of the computers under Defendant's possession, custody or control;

(C) Order that Defendant delete and permanently remove the infringing copies of the works Defendant has on computers under Defendant's possession, custody or control;

(D) Award Plaintiff statutory damages in the amount of $150,000 per infringed Work pursuant to 17 U.S.C. § 504-(a) and (c);

(E) Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) Grant Plaintiff any other and further relief this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

MALIBU MEDIA, LLC.
PLAINTIFF

By:  /s/ *Jon A. Hoppe*
Jon A. Hoppe, Esquire #6479
Counsel
Maddox, Hoppe, Hoofnagle &
    Hafey, L.L.C.
1401 Mercantile Lane #105
Largo, Maryland 20774
(301) 341-2580